UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EATON PARTNERS, LLC,

                            Petitioner,

-against-

AZIMUTH CAPITAL MANAGEMENT IV, LTD.,

                            Respondent.

**OPINION & ORDER**

18 Civ. 11112 (ER)

RAMOS, D.J.:

Eaton Partners, LLC ("Eaton") brought this action to confirm an arbitration award against Azimuth Capital Management IV, Ltd. ("Azimuth"). Doc. 6. On September 24, 2019, the Court entered an Opinion and Order confirming the arbitration award and awarding Eaton reasonable attorney's fees, to be determined upon application. Doc. 44. In accordance with the Court's Order, the Clerk of Court entered Judgment in favor of Eaton in the amount of CAD $921,514.57 for damages and US $263,639.72 in fees and costs.[1] Doc. 60. After an appeal by Azimuth that resulted in affirmation of this Court's Judgment, Eaton now moves the Court to amend its prior Judgment, as well as to enter an order for attorney's fees and costs. Docs. 53, 102. For the reasons set forth below, Eaton's applications are GRANTED in part and DENIED in part.

I.      FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes familiarity with its prior opinion in this matter, Doc. 44, and restates only the background necessary to resolve the instant motion.

These proceedings arose from a dispute over a placement agreement (the "Agreement") between Eaton, a Connecticut investment placement agent, and Azimuth, a Canadian private equity fund manager. The parties entered into the Agreement on May 22, 2014. *See* Doc. 6-1. Under the terms of the Agreement, Eaton was to act as Azimuth's placement agent and seek

---

[1] Unless otherwise noted, the symbol $ refers to United States dollars.

capital commitments for Azimuth on a best efforts basis, and Azimuth was to pay Eaton in installments. *See id.* Section 6(d) of the Agreement provided that "[a]ny payment or reimbursement that is not paid by [Azimuth][2] to Eaton when due under this Agreement shall bear interest at a rate of ten percent (10%) per annum," and "[i]n the event of such default in payment by [Azimuth], [Azimuth] shall pay Eaton's costs of collection including reasonable attorney's fees." *Id.* § 6(d). The Agreement also included an arbitration clause requiring arbitration in the case of any dispute and providing that the arbitrator was to determine the payment of arbitration expenses, including legal fees of the parties. *Id.* § 17. Finally, the Agreement provided that it would be governed and construed in accordance with New York law. *Id.* § 18.

On November 27, 2017, Eaton filed a demand for arbitration alleging that Azimuth had breached the Agreement by failing to pay certain fees and accrued interests. Doc. 6-4 ¶ 19. The parties attended arbitration hearings in August and September 2018. *Id.* ¶¶ 30-39. On October 29, 2018, arbitrator Stephanie Cohen (the "Arbitrator") issued a Partial Final Award in favor of Eaton. *See* Doc. 6-4. The Arbitrator's Partial Final Award provided, in relevant part:

> a. For breach of the Placement Agreement, Eaton Partners LLC shall recover CAD $921,514.57 from Azimuth Capital Management IV Ltd. as damages plus interest through to the date of this Partial Final Award.
>
> b. If the amount stated in subparagraph (a) is not paid within thirty (30) days of the date of this Partial Final Award, pre-judgment interest shall continue to accrue at New York's statutory rate of nine (9) percent per annum from that date until either the date of full and final payment of such amount or the date that this Partial Final Award is confirmed in a judgment.

Doc. 6-4 ¶ 124 (a)-(b). The Partial Final Award also granted Eaton its reasonable attorney's fees, expenses, and administrative costs for the arbitration and directed Eaton to make its submission to the Arbitrator by November 7, 2018. *Id.* ¶ 124(c).

On December 11, 2018, the Arbitrator issued the Final Award, which resolved the amount to be paid by Azimuth to Eaton for attorney's fees and expenses, the arbitrator's

---

[2] At the time the parties entered into the Agreement, Azimuth was known as KERN Energy Partners Management IV Ltd. *See* Doc. 6-1; Doc. 6-4 ¶ 10.

compensation, and administrative fees.  Doc. 14-5.  The Final Award awarded Eaton a total of $263,639.72 in attorney's fees, costs, and administrative fees.  *Id.* ¶ 35(a)-(f).  The Final Award also stated that "[t]he Partial Final Award is incorporated by reference in this Final Award" and "[t]his Final Award is in full settlement of all claims submitted to this arbitration and any claims not expressly granted herein are hereby denied."  *Id.* ¶¶ 3, 35(g)-(h).

On November 28, 2018, Eaton filed a petition to confirm the Partial Final Award with this Court, Doc. 6, and on December 12, 2018, it filed an amended petition following the issuance of the Final Award, Doc. 14.[3]  Azimuth moved this Court to vacate the Award, arguing that the Arbitrator had committed misconduct by failing to postpone the hearing when one of Azimuth's witnesses was unavailable and by refusing to accept another witness as a rebuttal witness.  Docs. 19, 20, 21.  Meanwhile, the parties were engaged in separate proceedings before a court in Canada, in which Eaton was also seeking enforcement of the Award.  *See* Tr. of 11/21/2019 Hr'g at 3:9– 5:25, Doc. 61.

On September 24, 2019, the Court denied Azimuth's motion to vacate the Award, confirming the Award in favor of Eaton and awarding Eaton reasonable attorney's fees, to be determined on submission.  Docs. 44, 49.[4]  The Court reasoned that the Arbitrator had not committed any misconduct in her conduct of the arbitration and had not disregarded the law.  Doc. 49 at 5-11.  The Court's Opinion did not discuss the application of prejudgment interest or the exact amount of the Award.  Rather, the Court stated that "[c]ourts are required to grant the award unless it is vacated, modified, or corrected."  Doc. 49 at 5 (citations omitted).  The Court held that vacatur was not appropriate and did not address whether judgment should have been entered in Azimuth's favor, because the request went beyond the Court's authority.  *Id.* at 11.

On December 2, 2019—following two hearings and several filings from the parties, including an effort by Azimuth to have Eaton's counsel, Gary Klein, disqualified as counsel, and efforts by Eaton to seek post-judgment discovery and restraining notices, including from the U.S.

---

[3] As in its first Opinion, the Court will refer to the Partial Final Award and Final Award together as the "Award."
[4] On October 18, 2019, the Court issued an amended Opinion *nunc pro tunc* to September 24, 2019, correcting two minor clerical errors in the original Opinion.  Doc. 49.

3

Marshals Service, as to the security to be posted by Azimuth[5]—the Clerk of Court entered Judgment in this matter. Doc. 60. The Judgment read as follows:

> It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Amended Opinion and Order dated October 18, 2019, Azimuth's motion to vacate the arbitration award is DENIED. The Award is CONFIRMED and judgment is entered in the amount of CAD $921,514.27 for damages in accordance with the Partial Final Award and US $263,639.72 in fees and costs in accordance with the Final Award (together, the "Award.")

*Id.* The Judgment was silent as to any prejudgment interest owed to Eaton.

On December 30, 2019, Azimuth appealed this Court's Judgment, Doc. 63, and on January 2, 2020, Azimuth moved the Court to stay execution of Judgment. Doc. 66. On January 24, 2020, the Court entered a stipulation and order proposed by the parties (the "Order") that provided in relevant part:

> that Azimuth has placed a deposit of the amount ordered by the Canadian Court into a trust account with its Canadian counsel as security for this Court's Judgment and for the benefit of Eaton; that the Canadian Security shall remain in Canadian counsel's trust account as security for this Court's Judgment unless the parties agree otherwise in writing and/or this Court or the court in Canada . . . orders otherwise; that so long as the Canadian Security remains posted in the trust account of Azimuth's Canadian counsel . . . execution on this Court's Judgment shall be stayed and Azimuth will have no other obligation to post security for the Court's Judgment, . . . [and] Eaton shall not initiate any proceeding in any jurisdiction to enforce or recognize the Award; that [Eaton's outstanding post-judgment discovery requests and Restraining Notice dated January 2, 2020] are deemed withdrawn without prejudice; that in the event the United States Court of Appeals for the Second Circuit affirms this Court's Judgment or dismisses the appeal, Azimuth will turn over the Canadian Security to Eaton on or before the tenth day following entry of judgment by the United States Court of Appeals; and that in the event the [Court of Appeals] reverses this Court's Judgment, Azimuth may take back the Canadian Security on or before the tenth day following entry of judgment by the [Court of Appeals].

Doc. 89 at 1-2.

On April 1, 2020, the Court of the Appeals for the Second Circuit so-ordered the parties' stipulation withdrawing Azimuth's appeal, pending mediation between the parties, subject to the

---

[5] *See* Tr. of 10/22/2019 Hr'g, Doc. 56; Tr. of 11/21/2019 Hr'g, Doc. 61; *see also* Docs. 45, 46, 54, 55.

4

provision that the parties might reinstate the appeal if mediation was unsuccessful. Doc. 91. The parties engaged in mediation but did not resolve their disputes. On September 15, 2020, the Court of Appeals reinstated the appeal, following Azimuth's timely notice of reinstatement. Doc. 98.

On April 20, 2021, counsel for Eaton informed the Court that the Court of Appeals had affirmed the Judgment. Doc. 101. That same day, Eaton filed supplemental briefing in support of its application for attorney's fees. Doc. 102. The parties thereafter filed several letters with the Court concerning their dispute over the operative date of entry of the Court of Appeals' judgment—and thus the date by which Azimuth would be obligated to deliver the Canadian Security to Eaton—and concerning Azimuth's petition to the Court of Appeals for a rehearing *en banc*, staying the issuance of the Mandate from the Court of Appeals. Docs. 104, 106, 107, 108, 109, 110, 111, 112, 114. On June 9, 2021, the Court of Appeals issued the Mandate affirming the Judgment of this Court, returning jurisdiction to this Court pursuant to Fed. R. App. P. 41. Doc. 116. On June 11, 2021, the Court entered an order directing Azimuth to turn over the Canadian Security to Eaton on or before June 21, 2021—the next business day following the tenth day after entry of the Court of Appeals' judgment—and directing Azimuth to submit its opposition to Eaton's application for attorney's fees on or before June 23, 2021. Doc. 120. On June 23, 2021, Azimuth filed its opposition to Eaton's application for attorney's fees, and Eaton filed its reply brief the same day. Docs. 123, 124. On August 31, 2021, the Court of Appeals entered an order taxing costs in the amount of $164.60 in favor of Eaton.

Now pending before the Court is Eaton's application for an amendment of the Court's prior Judgment to include prejudgment interest on the Award, as well as for attorney's fees. Specifically, Eaton seeks that the Court enter an amended judgment to award it:

- The Partial Final Award, in the amount of CAD $921,514.57;

- Prejudgment interest on the Partial Final Award, calculated at New York's statutory rate of nine percent per annum, in the amount of CAD $83,844.18;

- Attorney's fees and costs as calculated in the Final Award, in the amount of $263,639.72;

- Prejudgment interest thereupon, calculated at nine percent per annum, in the amount of $23,140;

- Attorney's fees and costs for the time period from October 30, 2018 to October 22, 2019, in the amount of $82,709.37;

- Attorney's fees and costs for the time period from October 24, 2019 to April 20, 2021, in the amount of $102,163.29.

Doc. 122 at 5. Azimuth opposes Eaton's request for prejudgment interest on both the Partial Final Award and the Final Award and seeks to reduce the amount of attorney's fees.

## II.    LEGAL STANDARD

### A. Rule 60(a)

Rule 60(a) of the Federal Rules of Civil Procedure allows a court to clarify a judgment. Under that rule, a court may provide "clarification and explanation, consistent with the intent of the original judgment[.]" *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 956 F. Supp. 2d 402, 410 (E.D.N.Y. 2013) (quoting *Garamendi v. Henin*, 683 F.3d 1069, 1079 (9th Cir. 2012)). Orders that clarify a judgment should "add certainty to an implicated party's efforts to comply with the [original] order" or "provide fair warning as to what future conduct may be found contemptuous." *N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984). However, Rule 60(a) "does not allow a court to make corrections that, under the guise of mere clarification, reflect a new and subsequent intent because it perceives its original judgment to be incorrect." *Consumer Fin. Prot. Bureau v. Sprint Corp.*, 320 F.R.D. 358, 363 (S.D.N.Y. 2017) (quoting *L.I. Head Start Child Dev. Servs.*, 956 F. Supp. 2d at 410)). Therefore, the distinction between an error that may be clarified under Rule 60(a) and one that must be "reconsidered" under Rule 59 and Local Civil Rule 6.3 is that "a correction under Rule 60(a) cannot alter the substantive rights of the parties, but rather

6

may only correct the record to reflect the adjudication that was actually made." *Consumer Fin. Prot. Bureau*, 320 F.R.D. at 363 (citation omitted).

### B. Attorney's Fees

The Second Circuit has held that the "lodestar" method outlined by the Supreme Court in *Perdue v. Kenny A.*, 559 U.S. 542, 551-53 (2010) and *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) —the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a "presumptively reasonable fee." *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). To calculate the reasonable hourly rate, "courts must look to the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Ognibene v. Parkes,* 08 Civ. 1335 (LTS), 2014 WL 3610947, at *2 (S.D.N.Y. July 22, 2014) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)). Furthermore, a "reasonable hourly rate" is the rate "a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. It is a rate "in line with ... prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (internal quotation marks omitted). "The actual billing arrangement certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded." *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001) (citation omitted).

To calculate the reasonable number of hours worked, "the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" *Bliven v. Hunt,* 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley,* 461 U.S. at 434). Ultimately, a district court has broad discretion in setting fee awards. *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 226, 237 (2d Cir. 1987); *see also Ruiz v. Maidenbaum & Assocs. P.L.L.C.,* 12 Civ. 5044 (RJS), 2013 WL 3957742, at *4 (S.D.N.Y Aug. 1, 2013) ("In reviewing the submitted timesheets for

reasonableness, the Court relies on its own familiarity with the case, as well as on its experience with the parties' evidentiary submissions and arguments." (citation omitted)).

### III. DISCUSSION
#### A. Amendment of the Court's Judgment

In its supplemental application for attorney's fees, Eaton requests that the Court amend or clarify its prior Judgment, Doc. 60, to include prejudgment interest on both the Partial Final Award and the Final Award. Doc. 102 at 5. As noted above, the Court's Judgment awarded Eaton both the Partial Final Award of CAD $951,514.57 and the Final Award of $263,639.72, but did not include prejudgment interest on either of these. In a footnote, Eaton suggests that this was possibly clerical error and that the Court has the authority under Fed. R. Civ. P. 60(a) and 60(b)(6) to amend the judgment. *Id.* at 5 n.1. Azimuth opposes Eaton's application, arguing that the request is procedurally improper, that there is no basis for amendment of the judgment under Rule 60(b)(6), and that any motion under Rule 60(b) is time barred. Doc. 121 at 2-3.

The Second Circuit has held, in cases with similar facts to the case at bar, that "a Rule 60(a) motion is appropriate 'where the judgment has failed accurately to reflect the actual decision of the decision maker to award [prejudgment] interest.'" *Robert Lewis Rosen Assocs., Ltd. v. Webb*, 473 F.3d 498, 504–05 (2d Cir. 2007) (citing *In re Frigitemp Corp.,* 781 F.2d 324, 327 (2d Cir.1986)); *see also Dudley v. Penn–America Ins. Co.,* 313 F.3d 662, 665 (2d Cir.2002) (holding that where a party's motion seeking an amended judgment to include an award of pre-judgment interest did not invoke a specific Rule, the district court correctly construed it as a motion under Rule 60(a), since the amended judgment "did not affect substantive rights" but "merely corrected a judicial oversight, namely the district court's failure to include the monetary award in the Original Judgment"). In *Rosen Assocs.*, the Second Circuit held that the district court judge's clear intention was to confirm the arbitration award in its entirety, and therefore the court's supplemental judgment under Rule 60(a) to add additional payments included in the arbitrator's award, but not in the court's judgment, was appropriate.

473 F.3d at 504-05.  Furthermore, Rule 60(a) "on its face applies only to [c]lerical mistakes and errors in judgments arising from oversight or omission," and has no time limitation.  *Lee v. Joseph E. Seagram & Sons, Inc.*, 592 F.2d 39, 41-42 (2d Cir. 1979).

      The Court finds that amendment under Rule 60(a) is appropriate to add prejudgment interest on the Partial Final Award for damages awarded by the Arbitrator.  Here, the Court's prior Opinion adopted the Arbitrator's Award in full.  *See* Doc. 49.  In its prior Opinion, the Court did not distinguish between the Partial Final Award and the Final Award, but made clear that it was confirming the Award in full.  Doc. 49 at 4-5, 11.  Furthermore, "[w]hen an arbitration award is confirmed, unless the court specifies otherwise, it includes the entire award." *Robert Lewis Rosen Assocs., Ltd. v. Webb*, No. 03 Civ. 6338 (HB), 2005 WL 1308942, at *2 (S.D.N.Y. June 1, 2005), *aff'd*, 473 F.3d 498 (2d Cir. 2007) (citations omitted); *see also Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 176 (2d Cir. 1984) (confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.").

      Turning to the Partial Final Award, Doc. 6-4[6], and Final Award, Doc. 14-5, the Arbitrator's intention is clear that prejudgment interest should accrue as to damages, but not as to attorney's fees.  The Arbitrator's Partial Final Award, incorporated by reference into the Final Award, stated that Eaton should recover CAD $921,514.57 from Azimuth as damages, and further stated "[i]f the amount stated in subparagraph (a) is not paid within thirty (30) days of the date of this Partial Final Award, prejudgment interest shall continue to accrue at New York's statutory rate of nine (9) percent per annum from that date until either the date of full and final payment of such amount or the date that this Partial Final Award is confirmed in a judgment."  Doc. 6-4 ¶ 124.  Subparagraph (b) of ¶ 124 of the Partial Final Award clearly refers only to subparagraph (a), which provides the substantive award of damages to Eaton.  *Id.*  Furthermore, in the Partial Final Award, the Arbitrator included a section on damages, *id.* ¶¶ 104-111, and a

---

[6] The Partial Final Award is also included as Doc. 14-4.

separate section on attorney's fees and costs of arbitration, *id.* ¶¶ 112-114.  The provision on prejudgment interest accruing at nine percent per annum was included only with the section on damages, not the section on attorney's fees.  By contrast, the Final Award did not include prejudgment interest on the $263,639.72 that it awarded Eaton in attorney's fees and other costs.  The Final Award is silent as to any calculation of prejudgment interest.  And, in general, prejudgment interest on attorney's fees is disfavored in this Circuit outside the civil rights context.  *Prince of Peace Enterprises, Inc. v. Top Quality Food Mkt., LLC*, No. 07 CIV. 349 (LAP), 2015 WL 456645, at *3–5 (S.D.N.Y. Feb. 3, 2015) (applying the framework articulated in *Wickham Contracting Co., Inc. v. Local Union No. 3, IBEW,* 955 F .2d 831, 833–34 (2d Cir. 1992) and discussing prejudgment interest on attorney's fees).  More to the point, the Arbitrator did not include prejudgment interest on attorney's fees in either the Partial Final Award or the Final Award, which this Court adopted in its Opinion.  This was not harmless clerical omission, but rather is a new category of payment that Eaton is seeking, and Rule 60(a) does not apply.

Because the Court finds that the omission of prejudgment interest on the Partial Final Award was clerical error, Rule 60(a) applies, and the Judgment will be amended to reflect as much.  Prejudgment interest at nine percent per annum accrued from November 28, 2018—thirty days after the Arbitrator issued the Partial Final Award—to December 2, 2019, the date Judgment entered.  As Eaton has correctly calculated, nine percent per annum interest on the award of CAD $921,514.57 amounts to CAD $83,844.18 for the 369 days from November 28, 2018 to December 2, 2019.  The Court will therefore issue an amended Judgment adding this amount of prejudgment interest.  Because the Court finds that the Arbitrator's Award did not include prejudgment interest on attorney's fees, the Court will not add the $23,140 in prejudgment interest that Eaton requests.  Doc. 122 at 5.

### B. Attorney's Fees

"In determining the appropriate value of an attorney's services in arriving at a reasonable fee, the court should consider, inter alia, the difficulty of the question involved, the skill required

to handle the problem, and the amount of time expended on the case." *M. Sobol, Inc. v. Wykagyl Pharmacy, Inc.*, 723 N.Y.S.2d 88, 89 (2001). "[T]he determination must be based upon a demonstration of the hours reasonably expended on the litigation and what is reasonable compensation for the attorney based upon the prevailing rate for similar work in the community." *RMP Cap. Corp. v. Victory Jet, LLC*, 32 N.Y.S.3d 231, 236 (2016). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley*, 461 U.S. at 434.

Initially, "the burden of showing the 'reasonableness' of the fee lies upon the claimant." *Matter of Karp*, 537 N.Y.S.2d 510, 515 (1989). A movant may carry this burden with statements that "show the work that was performed each day and contain an abundance of detail." *Red Apple Supermarkets, Inc. v. Malone & Hyde, Inc.*, 687 N.Y.S.2d 50, 51 (1999). Once a movant provides this evidence, the burden shifts to the non-movant who must then "point out all instances of irregularity or dispute, not just a few examples." *Id.* After considering these issues, "[t]he determination of a reasonable attorney's fee is generally left to the discretion of the trial court, which is often in the best position to determine those factors integral to the fixing of a reasonable fee." *Miller Realty Assocs. v. Amendola*, 859 N.Y.S.2d 258, 261 (2008).

Eaton has met its initial burden by submitting time and cost reports detailing the work performed and the costs incurred. *See* Doc. 53 Exs. 1, 2; Doc. 102 Exs. 1, 2. Each entry contains a description of the task performed, the name and position of the attorney who performed the task, the amount of time that that attorney spent on the task, and the relevant date. As a result, Eaton has met its initial burden and Azimuth must point out all instances of irregularity or dispute. *Red Apple Supermarkets,* 687 N.Y.S.2d at 51. In its original opposition, Doc. 59, and in its opposition to Eaton's supplemental submission, Doc. 121, Azimuth raises four issues. The Court addresses each of these disputes in turn.

First, Azimuth argues that Eaton should not be awarded fees and costs for work unrelated to enforcing the arbitration award in this proceeding. Doc. 59 at 3-6. Azimuth cites *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999), and *LeBlanc-Sternberg v. Fletcher*, 143 F.3d

11

748, 764 (2d Cir. 1998), for the proposition that fees and costs for categories of work that are "excessive, redundant" "unnecessary," or "dedicated to severable unsuccessful claims" or "unrelated maters" should be denied. Doc. 59 at 3. Specifically, Azimuth challenges Eaton's request for fees for work related to the attorney's fees application submitted to the Arbitrator; for the parallel enforcement action brought in Canada; for unsuccessful settlement negotiations with Azimuth's counsel; and for work responding to Azimuth's letter regarding a potential motion to disqualify Eaton's counsel Gary Klein, Doc. 45.

The Court agrees with Azimuth that Eaton's entries related to its application to the Arbitrator for attorney's fees—which the Arbitrator already awarded to Eaton—are redundant and may not be awarded again. The Court will therefore deny or reduce the following:

1) the October 30, 2018 entry ("Prepare attorney's fee submission; e-mails with clients re: strategy; e-mail to respondent re settlement"), in the amount of $1,780, is denied;

2) the October 31, 2018 entry ("Further work on post award filings, analyze court filing and remedies"), in the amount of $2,225, will be halved, as post award filings were directed to the Arbitrator;

3) the November 1, 2018 entry ("Further work on and finalize fee application; draft petition to enforce"), in the amount of $1,780 will be halved, as the fee application was directed to the Arbitrator;

4) the November 12, 2018 entry ("E-mail opposing counsel re enforcement; review opposition to fee application"), in the amount of $623, will be halved, as the fee application was before the Arbitrator;

5) the November 13, 2018 entry ("Respond to arbitrator inquiries"), in the amount of $225, is denied.

In total, the Court reduces Eaton's fees by $4,319. As to the separate Canadian enforcement action, brought for enforcement of the same award,[7] the Court will not award attorney's fees in this proceeding, as it was a matter before another court in another jurisdiction. The Court therefore disallows all time entries in Eaton's original submission that are solely

---

[7] "[Azimuth] are under order to post security in Canada, there are parallel proceedings going in Alberta. They're under order to post security by January 10. They don't have to post security in both places, they just have to post security in one place." Tr. of 11/21/2019 Hr'g at 3:9–14.

12

related to the Canadian enforcement action—in total $11,533.50. Doc. 59-1, App'x B. Likewise, the Court denies the following time entries in Eaton's supplemental submission pertaining to Eaton's work on the Canadian proceedings:

1) the November 5, 2019 entry ("E-mails with clients re: strategy; call with Calgary counsel re: process in Calgary"), in the amount of $315;

2) the December 2, 2019 entry ("Review Canadian filings. Emails with Canadian counsel re-same"), in the amount of $405;

3) the December 4, 2019 entry ("Review Calgary submissions re: security"), in the amount of $225;

4) the January 7, 2020 entry ("Call with Canada counsel re status . . ."), in the amount of $1,425;

5) the April 7, 2020 entry ("Call with Canadian counsel re procedures; e-mail client re same"), in the amount of $237.50;

6) the April 15, 2020 entry ("Review and analyze Canadian counsel opinion"), in the amount of $237.50.

The Court halves the following time entries[8], which are block-billed but include entries for work on the Canadian proceedings:

1) January 2, 2020 ("Analysis re: potential for immediate execution in Canada; research re: execution in New York; review restraining order against Azimuth; attend to service and filing of same; review pre-motion conference letters"), totaling $507.50;

2) January 3, 2020 ("Review various filings by Respondent; research re same; draft responses; draft letters to court re same; review Canadian filings"), totaling $712.50;

3) January 7, 2020 ("Continue legal research . . . review Canadian filings for inconsistent statements re: ability to satisfy judgment assets"), totaling $1,365;

4) The January 9, 2020 entry ("Review and revise opposition to motion for stay . . . calls and e-mails with Canadian counsel re proceedings and strategy"), totaling $997.50;

---

[8] The total amounts listed below represent half of the amount requested by Eaton for each entry.

5) The January 10, 2020 entry ("Strategize re post judgment relief; call with Canadian counsel re hearing"), totaling $427.50;

6) The April 2, 2020 entry ("Call with J. Eaton re: strategy and settlement; e-mail with Calgary counsel re: same"), totaling $118.75.

The Court therefore reduces Eaton's fees for the original submission by $11,533.50, and its supplemental submission by $6,973.75. The Court does allow Eaton its fees for responding Azimuth's letter-motion, which sought to move to disqualify Klein as Eaton's counsel. The Court also allows Eaton its fees for communications with its client and opposing counsel concerning settlement—Eaton was the prevailing party with respect to the entire litigation, and thus the Court will not sever Eaton's work for settlement negotiations.

Second, Azimuth argues that Eaton's fees were not reasonable for the work performed, particularly since the bulk of work was done by a partner and a senior associate (who, according to Eaton's time reports, became a partner in 2019, during the pendency of this case)—rather than junior associates or paralegals. Doc. 59 at 6-7. Azimuth argues that the staffing of two partners on this case, including for relatively simple tasks such as filing and compiling exhibits, is unreasonable.[9] *Id.* at 7. Eaton's submissions include billing by four attorneys, at hourly rates from $235 to $450. Courts have found rates similar to, or higher than, these rates to be reasonable in the Southern District of New York. *See In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (partner rate of $700-$750 per hour and associate rate of $300-$550 per hour found reasonable); *In re Independent Energy Holdings PLC Sec. Litig,* No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *9 (S.D.N.Y. Sep. 429, 2003) (hourly rates from the year 2003 of $650 per hour for partners and $300-$425 per hour for associates found reasonable for "topflight New York City law firm"); *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 46 (2d Cir. 2000) (rate of $550 per hour in 1996 was justified to "recognize the quality of the representation rendered"). The Court therefore finds that the rates charged here are reasonable.

---

[9] Associates Lindsay Reed and Drew Cunningham also worked on time entries included with the supplemental submission. *See* Doc. 102 Ex. 1.

14

However, the Court does find some of hours worked to be "excessive, redundant, or otherwise unnecessary[.]" *Hensley,* 461 U.S. at 434. Eaton includes multiple entries that seek to recover attorney's fees on its preparations of fee submissions. *See, e.g.*, Doc. 102, Ex. 1 (October 24, 2019 entry for Todd Michaelis; January 2, 2020 entry for Lindsay Reed; April 14, 2021 entry for Gary Klein). New York law does not authorize fees on fees, absent specific contractual language to indicate that time spent justifying fee applications may be included. *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1266 (2d Cir. 1987) (citations omitted) ("[A] general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves.") In its original filing, Eaton's counsel also includes multiple block billed entries that include communications with Canadian counsel or with their client about the Canadian proceedings. *See* Doc. 59-1 App'x H. Furthermore, while the Court finds the rates overall to be reasonable, the Court agrees with Azimuth that it is unnecessary for a partner, billing at $310 per hour, to undertake administrative tasks such as assembling packages, preparing hard copies, and preparing compact discs. *See* Doc. 53, Ex. 1 (January 29, 2019 and January 30, 2019 entries for Todd Michaelis); Doc. 59 at 7. The Court will therefore reduce the overall amount to be awarded by 10%.

Third, Azimuth argues that Eaton's remaining fees and costs should be reduced for vagueness and block billing in several time entries—that is, grouping multiple tasks into single entry. Doc. 59 at 8-9. The Court does note that many, if not most, of Eaton's entries are block billed. "[B]lock billing is common practice among law firms, and there is no per se rule as to the maximum or minimum that block-billed fees should be reduced to account for unnecessary work." *APEX Emp. Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*, No. 11 CV. 9718 (ER), 2018 WL 5784544, at *4 (S.D.N.Y. Nov. 5, 2018) (citing *Daniele v. Puntillo*, 949 N.Y.S.2d 365, 367 (2012); *Cmty. Counseling & Mediation Servs. v. Chera*, 982 N.Y.S.2d 469, 471 (2014)). However, despite the absence of a per se rule, New York Courts have routinely found that a 10% reduction in block-billed hours is appropriate in cases where descriptions of time spent is otherwise clear. *APEX Emp. Wellness Servs.*, 2018 WL 5784544, at *4.

15

Considering that Eaton's entries are largely block-billed but otherwise clear as to the work performed, the Court will reduce the overall amount to be awarded by a further 10%.

Fourth, Azimuth argues that Eaton's travel costs and costs incurred for Westlaw research should be denied. Docs. 59 at 10, 121 at 5-6. In particular, Azimuth objects to Klein and Michaelis billing 6.5 hours each to attend a pre-motion conference before the Court on October 22, 2019, arguing that this entry includes travel time since the conference was only about 30 minutes long. Doc. 59 at 5. In prior cases in this district, courts have reduced the amount of travel to 50% of the rate and do not credit travel time at the attorney's full hourly rate. *APEX Emp. Wellness Servs.,* 2018 WL 5784544, at *5 (citing *Daiwa Special Asset Corp. v. Desnick*, No. 00 CIV. 3856 (SHS), 2002 WL 31767817, at *1 (S.D.N.Y. Dec. 3, 2002)). The Court agrees that billing 6.5 hours for each attorney is excessive and will reduce the October 22, 2019 entries for both Klein and Michaelis by half, totaling $2,470. The Court will likewise reduce the November 21, 2019 entry for Klein's appearance at a pre-motion conference, for which he billed $1,575. *See* Doc. 53, Ex. 1; Doc. 102, Ex. 1. Therefore, the Court subtracts $3,257.50. Given this reduction, the Court will not also deny the modest costs for parking, transit, and mileage incurred by Michaelis' and Klein's attendance at the conferences.

To summarize, Eaton seeks a total of $184,872.66 in attorney's fees. Of this, the Court subtracts $22,826.25 as related to the Canadian action and the arbitration action. The Court subtracts another $3,257.50 for travel costs, leaving $158,788.91. Due to Eaton's block-billing and sometimes excessive entries, the Court will reduce this by 20% total, thus awarding Eaton a total of $127,031.13 in fees and costs.

## IV.   CONCLUSION

For the reasons set forth above, Eaton's motion for attorney's fees is GRANTED in part and DENIED in part. The Clerk of Court is respectfully requested to issue an amended judgment in accordance with the terms of this Opinion:

- Amend the Judgment, Doc. 60, by adding prejudgment interest in the amount of CAD $83,844.18;
- Award Eaton US $127,031.13 in attorney's fees and costs.

The Clerk of the Court is respectfully directed to terminate the motions, Docs. 53 and 102, and to close the case, No. 18 Civ. 11112 (ER).

It is SO ORDERED.

Dated:  September 23, 2021
       New York, New York

                              Edgardo Ramos, U.S.D.J.